No. 369

First Circuit

## HAWTHORN v. HILLYER-DEUTSCH-EDWARDS, INC.

(January 9, 1929. Opinion and Decree.)

Chandler and Taylor, of Shreveport, attorneys for plaintiff, appellee.

Thornton, Gist and Richey, of Alexandria, attorneys for defendant, appellant.

ELLIOTT, J. Oscar Hawthorn, employee of Hillyer-Deutsch-Edwards, Inc., was struck on the head and badly hurt by the cab of one of its locomotives on which he was employed as fireman. He sues for compensation under the Employer's Liability Act of this State, Section 8 (amd. Act 85 of 1926), on the ground that the injury he received has produced in him a permanent total disability to do work of any kind.

He alleges that he was employed on one of defendant's logging trains as fireman. That on April 1, 1927, while engaged in his duties as such, that the train went over a portion of track, from under which the foundation had been washed out or removed. That he was standing on the tender of the engine at the time stacking fuel, and when it entered on the track, from under which the foundation had been washed, the roof of the tender dropped down and struck him on the head. That he was thereby knocked to the floor of the tender and greatly injured. That the blow depressed his skull, causing pain in his head and eyes; injured his hearing, neck, right arm and the nerves of his left leg to the extent that he can not use his foot. That it also caused loss of sensation in certain areas of his left leg, right arm and hand, and materially impaired the use of same. That it also split one of the joints of his thumb, resulting in the loss of its use.

The defendant admitted plaintiff's employment; alleges that he bumped his head on the roof of the cab. That the blow on

the head and neck was accidental; that it had notice of an accidental bump or bruise to plaintiff's head and neck, but of no other injuries. The other averments in plaintiff's petition were denied.

The lower court, for reasons stated in writing, rendered judgment in favor of the plaintiff as prayed for. Defendant has appealed.

The plaintiff filed in this court a motion to dismiss the appeal. Attached to the motion is a letter, abandoning or withdrawing the motion. The motion is looked on as abandoned.

The plaintiff is a negro laborer, about 38 years old. Abbreviating his testimony to substance and effect, his statement is, that he was standing in the cab of the locomotive piling up wood when the engine ran into a washout. That when the back driving wheels of the engine dropped into the washout, the drop caused the cab in which he was standing to hit him on the head. That the blow knocked a hole in his head; knocked him down and in falling he fell on his head, right side and shoulder. That as a result of his injury he was confined to his bed for about four weeks, rendered foolish about the head, had blind staggering spells, lost the use of his right arm, left leg and foot, the grip in both hands, and suffered severe and enduring pain. That the fifth week after his injury, although still suffering and unable to work, the doctor discontinued his insurance, thereby compelling him to go back to work. That when he returned to work the brakeman said to him: "You are back out—and I said yes, but I am not well and I do not believe that I am able to work," etc. He remained on the work, however, about five weeks, receiving the same pay that he had been getting at the time he was injured. That after firing about five weeks he fell out. That at the time he returned and during all the time he was working he suffered with spells in his head, back and limbs. That after about five weeks he got suddenly sick, could not see and had to quit work. That when his sight came back he went home and had not tried to work since. That he was unable to do work of any kind. The plaintiff further testified that he could not have done the work of firing the engine when he returned, had it not been that the brakeman helped him; that the brakeman on the train fired the engine and helped him do his work. Plaintiff's wife testified that he complained to her of his head, neck and shoulder when he was brought home, following his injury in the locomotive cab, and continued to do so; that he could not use his hand at the time he returned to work. That she discovered a dent in his head, etc.

The evidence shows that plaintiff has but one leg. He lost his right leg in an accident about 15 years ago while working for another lumber company. His right leg has been amputated just below the knee. He has also lost the two middle fingers on his right hand. This happened to him about five years ago while working for still another lumber company.

In an effort to show that plaintiff was all right and not suffering when he returned to work, defendant called the foreman of its steel gang. This witness testified that he saw the plaintiff working as fireman after his return. That plaintiff never complained to him. That he worked after his return, as far as he observed, as well as he did before he was hurt. That it took an able bodied man to do the work, and that nobody helped him as far as he knew. This witness intimates that the reason why plaintiff quit work

after he returned, was because he got too hot. He says that it was a very hot day; that two other men got over-heated that day.

The defendant also called its superintendent for that purpose. The superintendent testified that he saw plaintiff firing the engine after he came back on the work. The plaintiff never complained to him after coming back. That nobody helped him do his work as far as he knew. That plaintiff asked him for money which he gave him after he had come back, and quit in order to go to New Orleans to get shots, etc.

The plaintiff was treated following his injury in the cab by a physician in the employ of the defendant. The plaintiff testifies that he complained to this doctor about the injury to his head, neck and shoulder. This physician however, was not aware of the injury to plaintiff's head.

Four physicians examined plaintiff at the instance of his attorney previous to the trial, in order to ascertain his condition. They say that they went about it by obtaining from the plaintiff the history of his injury and what he had to say about his condition. This testimony was taken as provided for by Act 96 of 1926. The testimony of a physician was also taken in the same way by the defendant. The physician in the employ of defendant and who had treated plaintiff for his injuries was examined in open court. The four called by the plaintiff and the one who testified out of court for the defendant, found on their examination of the plaintiff a depressed scar on his head. One of those called by plaintiff expressed the opinion that it was a depression of the skull. The others were not explicit as to whether there was, or was not a depression of the skull, but all five agreed that

there existed a depression noticeable to the eye. From their testimony we infer that it was so noticeable that it could not have been overlooked by even a casual examination. The four physicians called by the plaintiff and the one who testified out of court for the defendant also united in saying that plaintiff suffered a weakness in his left leg and foot, and diminished power of grasp or grip in both hands. The loss of grip in the hands and of power in the foot seems to have also been quite evident. The four called by the plaintiff found in addition, that plaintiff was deaf in his right ear; had suffered a loss of strength and sensation in both arms, back of his neck and in his left leg, foot and small toes, and were positive that plaintiff's loss of strength in his arms, hand, left leg and foot was such that he was unable to perform manual labor. They were also of the opinion that plaintiff's condition was brought about as a result of trauma, involving his neck and shoulder, and not by disease, and that there was but little prospect of improvement. One of the physicians explained in response to a question on the subject, that an ignorant negro could not have deceived him as to his condition, in the way stated. One of the physicians called by plaintiff had specialized in mental and nervous disorders.

The physician who treated plaintiff when he was first injured did not examine him as to the condition of his head, loss of sensation, loss of strength in his hands, arms, legs and foot, and therefore has expressed no opinion on that subject. The other physician called by defendant expressed the opinion that there was no loss of hearing nor of sensation. All of the physicians expressed the opinion that injuries such as plaintiff has or claims to have, would have prevented him firing the engine unless aided. The physician who

treated plaintiff following his injury in the cab did not think any serious result had followed. He admits that plaintiff complained of pain in the temple region, in his neck and back of his neck; but he was inclined to believe that he fell out, after he returned to work, as a result of sun stroke, and that as to the other symptoms of which he complained, same could be accounted for by a disease which he found him to have. The plaintiff, in his opinion, was feigning injury for the purpose of getting paid off and there was nothing in fact the matter with him. He admits that trauma on the neck could and likely would cause troubles like those which plaintiff claims came on him.

The trial court had the plaintiff before him and we have his opinion as to his condition.

It is certain that plaintiff received a heavy blow on the head by the cab of defendant's locomotive, while engaged in his work as fireman, and the preponderance of the opinion evidence, and all the substantive proof on the subject, that is, proof based on sufficient knowledge to justify regarding it as such, is to the effect that plaintiff has sustained, as a result of the injury so received, a permanent total disability to do manual labor. According to the evidence, this is the only kind which the plaintiff is capable of performing for a livelihood.

The defendant urges with consummate force and strength of argument that there is nothing the matter with the plaintiff, that he is not suffering as he claims; but that if he is, it is not due to the trauma, but to a disease which he has. But the record does not support that view of the case.

If defendant had really felt that plaintiff's statement that he was suffering at the time he returned to work and could not have fired the engine unless he had been aided by the brakeman was untrue, it could have contradicted his statement by the engineer for whom he fired and the brakeman on the train.

It was all right to call the foreman of the steel gang and the superintendent, but certainly the log train was often at a different place from where they were, and they could have hardly been in a position to know, except now and then, whether plaintiff was being assisted in firing the engine or not. The engineer on the locomotive, under whom plaintiff worked as fireman, and the brakeman on the train, who, plaintiff says assisted him, knew the facts better than the foreman of the steel gang and the superintendent, and could have contradicted him if his testimony given in chief had been untrue. The engineer and brakeman were presumably within defendant's reach at the time of the trial, as well as the foreman and superintendent. If plaintiff appeared to be suffering when he returned to work, they were in a position to observe it. If he complained they would be almost bound to have heard it, and if the brakeman assisted and fired the engine because of the condition in which he appeared to be, it was within their knowledge. The failure to call them is not explained. In the absence of this failure we take it that it was not done because it was found that they would not contradict the plaintiff.

As for defendant's further theory that plaintiff fell out after he returned to work as the result of sun stroke or because of over-heat, plaintiff was in the cab exposed to the heat of the engine, but not to that of the sun. The preponderance of the evidence does not support this theory as the cause of his collapse, but that it was due to the previous injury in the cab.

We are therefore of the opinion that the conclusion arrived at by the lower court was the proper one.

The judgment appealed from is therefore affirmed. The defendant and appellant to pay the cost in both courts.