## MAHAFFEY v. MILL CREEK LUMBER CO. et al. *

### No. 4401.

Court of Appeal of Louisiana.
Second Circuit.

April 28, 1933.

Julius T. Long, of Shreveport, for appellant.

R. L. Williams, of Arcadia, for appellees.

TALIAFERRO, Judge.

The petition of plaintiff avers that on or about May 14, 1929, while in the employ of defendant, the Mill Creek Lumber Company, a copartnership composed of S. M. Tomme, Mrs. S. M. Tomme, Chas. E. Tomme, and Carroll D. Tomme, he was injured by falling off a motortruck used in hauling logs in connection with his work, and by the right rear wheel of said truck passing over and crushing the bone of the thigh of his right leg. He further alleges that, as a result of said injuries, the usefulness of his leg is so seriously impaired as to amount to permanent loss of same; that since said injuries he has not been able to do any work of a reasonable character, and that this disability will continue the remainder of his life; that he sustained said injuries in the performance of services arising out of and incidental to his employment with defendants, who were the owners of and operated a sawmill engaged in manufacturing lumber from logs, and selling same.

He sues the mill company and its members in solido for compensation of $10.72 per week for 400 weeks, less payments thereof made to August 13, 1930.

Defendants filed exceptions of misjoinder, prematurity, and of no cause or right of action. No action was taken on either exception, according to the record. None of them is urged in this court. The answer of defendants denied, categorically, all the allegations of plaintiff's petition, except those relating to defendant's partnership status, the persons composing it, and the business it is engaged in, which are all admitted. It is also admitted that plaintiff was injured, and that defendant provided him with medical, surgical, and hospital attention and service, and that he has drawn his wages since said time. In the alternative, defendants aver that, in event it should be found and held that plaintiff was injured while in the discharge of his duties, he is now recovered to such extent that he is able to perform some labor and is not permanently disabled.

There was judgment in the lower court rejecting plaintiff's demands, and he appealed.

Defendant's counsel, in brief, says that the question to be decided is: Did the relationship of employer and employee exist between plaintiff and defendant on the day and at the time of the accident, and was the plain-

*Rehearing denied June 5, 1933.

tiff working for defendant in the discharge of his duty at time of the injury complained of? We think there is another question presented, which has to be passed on in deciding the case, and that is this: Did the injury to plaintiff "arise out of and incidental to his employment in the course of his employer's business," within the meaning of Act No. 20 of 1914, and the jurisprudence of this state interpreting that statute?

Defendant carried insurance in the Southern Casualty Company to protect it against loss and damage to injured employees. Immediately after plaintiff was injured, Mr. Chas. E. Tomme, a member of defendant partnership, made up and transmitted to the insurance company the usual and customary report covering plaintiff's injury, advising that he was an employee of the insured and entitled to compensation. On the faith of the verity of this report, compensation was paid plaintiff until August 13, 1930, when it was discontinued because of the insurance company being placed in the hands of a receiver. This suit was then filed. Plaintiff testified, and it is not contradicted by any evidence, that he consulted Carroll Tomme, another member of defendant firm, as to the course he should pursue after payment of compensation ceased, and that Tomme advised him to enter suit against the surety company. He had been working, according to his testimony and understanding, for defendant ·for three or four months, and lived one-fourth of a mile from the mill. When injured he was in the woods on his way to, but one hundred yards from, the place where his regular labor was daily performed, and one and one-half miles from his home. Handling hooking tongs was his principal duty. He testified that defendant required its truck drivers to pick up the workmen each morning and convey them to the scene of 'their labors, and that the morning he was injured one Doyle Giddens, driving a truck he thought belonged to defendant, in keeping with the rule and custom, did pick up him and a colaborer by the name of Nettles, tractor operator, and was conveying them to the place where they had worked the day before loading logs, and, as a heavy rain had fallen the night before, they had gotten out of the truck several times on the way to do what was necessary to drain the road of rainwater thereon, this being done to enable the trucks to haul logs over it; that, as the truck started off, after making the last stop for said purpose, he fell out of it to the ground and was run over and injured, as above described. This was the first time plaintiff had assisted in draining the road.

There was no direct evidence offered by plaintiff besides his own.

· Doyle Giddens, on behalf of defendants, testified that he was hauling logs for the defendant company; that he passed plaintiff's home about 7 o'clock the morning of the accident, and was hailed by him; that plaintiff asked him where he was going, and he replied "to work the road," whereupon plaintiff requested that he be allowed to go along, which was acceded to, and he "pitched in and helped us some himself voluntarily" ; that it was the truck drivers' obligation to keep the roads in condition for hauling logs to the mill. He also testified that he was not employed by the mill company, contradicting earlier evidence given by him, but by Charlie Tomme and Oscar Boyett, the company's bookkeeper; that the company had nothing to do with the truck he was driving; that on the day of the accident to plaintiff none of its employees was working in the woods, on account of heavy rain the night before; that, for his services as operator of the truck, which he said was owned by Charlie Tomme and Oscar Boyett, he was paid "by the fourth" of what he hauled, which amounted to from three to four dollars per day. He admits that plaintiff had hooked the tongs to logs loaded on this particular truck for two or three months and had thus worked the day before he was injured, that he had regularly ridden on this truck to his work in the woods, and that it was the custom for all the trucks to haul the laborers to the woods to work. However, he says this was not required by the company of Mr. Tomme, but was known to them. He also states that Charlie Tomme and Oscar Boyett would pay him for his services in cash at the company's commissary, that Bud Nettles operated the tractor, used to load his truck with logs, and that plaintiff and Nettles composed the crew that loaded the logs on the truck, and, when asked why they happened to be on his truck, going towards the place where the loading had been done the day before, at time plaintiff was injured, replied, Just to be with me." The following testimony given by this witness is significant:

"Q. Who were the crew that run the tractor? A. Bud Nettles and Mahaffey.

"Q. Then it happened by accident that on the day that Mahaffey got hurt that you as usual left your home at the usual hour, went out on the usual road hauling the loader crew to where you usually haul? A. Right.

"Q. Yet you want this Court to believe that they were not going out to work? A. They were not, they were laid off.

"Q. The Mr. Tomme you claimed you worked for owned interest in this sawmill did he not? A. Yes sir."

Charlie Tomme, referred to by the witness Giddens, was one of the partners of defendant company. He looked after estimating and buying of timber for the company, and acted also as woods foreman. He, his father and mother and brother, were the sole owners of the company. He testified that the truck

operated by Giddens was owned by him and Boyett, and that the company had nothing whatever to do with its operation, and that Giddens was not employed by the company. He admits he made an error in reporting to the surety company that plaintiff was an employee of his company and entitled to compensation on that basis. His answer on this point is as follows: "It was an error on my part in making the report and I just let it go because he was getting paid, and Jim Tingle reported it to me and I didn't know but what he had hired him."

It is significant that he says "Jim Tingle reported it to me and I didn't know but what he had hired him." Tingle was a woods foreman of defendant company, and presumably had authority to hire. If plaintiff was not an employee of defendants, Tingle, who was well informed as to the company's operations, should have known it. The questions arise: Why should he report to Tomme that one not employed by the company had been hurt? And why would Tomme pass the matter on to the company's insurer and become instrumental in having compensation paid to an injured party, if he was not in fact an employee of the partnership? He states he never did tell plaintiff he was working for him and not the company because plaintiff never asked him, and was unable to explain why his brother, Carroll Tomme, advised plaintiff to sue the insurer when compensation payments were discontinued.

Notwithstanding the evidence on behalf of defendants to the contrary, we conclude that plaintiff was in the employ of the defendant mill company prior to the time and when injured. There was nothing to indicate otherwise; plaintiff himself knew nothing to the contrary until the insurance company ceased paying compensation. Then the scene was changed, and he became an employee of one of the partners and the bookkeeper of the mill company. The status of matters at the time when there existed no good reason to act other than from honest motive, sustains plaintiff's contention and negatives that of defendants.

We also conclude that plaintiff, as was his custom, boarded the truck operated by Giddens, for the purpose of being transported to his work. The fact that this truck left the mill site at the usual early morning hour, and that plaintiff and Nettles, the tractor operator, joined Giddens, the three constituting the full loading and hauling unit, and that they had almost reached the place where loading had been done, convinces us that this unit had no other intention than to load and haul logs that day.

As a rule, workmen injured while going to and returning from their daily work are not entitled to compensation. Bass v. Shreveport-Eldorado Pipe Line Co., 4 La. App. 107; Nugent v. Lee Lbr. Co., 4 La. App. 371; Boutte v. Roland & Son, 15 La. App. 530, 132 So. 398; Crysel v. Briggs & Co. (La. App.) 146 So. 489, and authorities cited therein. It has been held, however, that, where it is a part of the contract of hiring that the employer will convey the employee from his home to the scene of his labor, if injured on the way, he is entitled to recover. Lagrone v. McIntyre Lbr. Co., 1 La. App. 567; Jones v. La. Central Lbr. Co., 2 La. App. 360; Prevost v. Gheens Realty Co., 151 La. 508, 92 So. 38; Lizzie Keyhea v. Woodard-Walker Lbr. Co., 147 So. 830, this day decided by this court.

In the present case there is no serious contention that defendant's employees were not daily driven by trucks to their work; that they depended upon this means of transportation to reach the woods where their work would begin; and, while there is evidence tending to show these trucks were not owned by the mill company, yet they were used in its sawmill business, and supplied the mill with logs, and were required to convey the workmen to and from work.

Plaintiff is positive the truck operators had instructions from the Tommes to pick up and haul the laborers to their daily work, and Giddens says this was regularly done, but as a courtesy, while Charlie Tomme denies it was required to be done and denies that it was done as a practice. The testimony of this member of the firm, in view of its inconsistency with his entire course of conduct with respect to plaintiff's injury and application for compensation, is materially discredited.

Whatever else may be said about this evidence, viewing it in the light of other facts virtually undisputed, it certainly establishes that defendants impliedly, if not expressly, agreed to supply conveyance to plaintiff and other employees to their work in the woods. If this line of conduct was followed, as it seems to have been, during the mill's operations, extending over a period of some three years, to the knowledge of its members, and with their tacit, if not express, consent, we think it reasonable to assume that there was a general understanding by both sides that, as part of the compensation of the employees, free transportation would be provided them by the mill company to their work.

We think this case falls within the exception to the rule that an employee injured while going to and returning from the scene of his labor cannot receive compensation, and that plaintiff was injured in the course of his employment, and that his injuries were received from an accident arising out of such employment.

The exception to this rule was discussed somewhat at length by Judge Odom in Bass v. Shreveport-Eldorado Pipe Line Co., supra, from which we quote, as applicable to the instant case:

"As a general rule, the relation of master and servant ceases when the servant leaves the place of his employment at the close of a day's work to go to his home.

"In the case of Podgorski v. Kerwin, a case decided by the Minnesota Supreme Court and reported in [144 Minn. 313] 175 N. W. 694, it is said:

" 'It is a well-settled general rule that an injury suffered by an employee in going to or returning from his employer's premises where the work of his employment is carried on, except in special instances not here involved, does not arise out of his employment so as to entitle him to compensation.'

"And in the case of Arthur C. Nesbitt v. Twin City Forge & Foundry Co. [145 Minn. 286], 177 N. W. 131 [10 A. L. R. 165], the same court said:

" 'As a general rule an injury suffered by an employee in going to or returning from his employer's premises, where the work of his employment is carried on, does not arise out of his employment so as to entitle him to compensation under workmen's compensation acts.'

"We find no dissent from this general rule. The courts, however, generally recognize an exception to the general rule as follows:

" 'Where the employee is injured while riding to or from his work in a conveyance provided by the employer, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employees, and is one which the employees are required, or as a matter of right are permitted, to use by virtue of the contract, the injury may be held to have arisen out of and in the course of the employment so as to entitle the employee to compensation.'

"In an elaborate case note found in 10 A. L. R. 169, the general rule is thus stated:

" 'It is generally held that where transportation is furnished by an employer as an incident of the employment, an injury suffered by an employee in going or coming in a vehicle so furnished by the employer and under his control, arises out of and is within the course of his employment within the meaning of workmen's compensation acts.'

"And in support of the text the annotator cites cases from California, Connecticut, Maryland, Massachusetts, Minnesota, New York, Wisconsin and England.

"The above note is supplemented by one found in 21 A. L. R. 1223 where more recent cases are cited and reviewed to the same effect.

"A reading of the cases cited, where the courts have held that an accident to an employee, while riding to or from his work, arises out of and during the course of his employment, will disclose that in such cases the transportation was furnished by the employer as an incident of the contract of employment or was part of the consideration therefor."

■ For reasons best known to defendants, many witnesses acquainted with the operation of their sawmill, who were present the day plaintiff was injured, were not used in the case. They were within reach of the process of the court, and had formerly been in defendants' employ. Under the circumstances, plaintiff could not be expected to bring them into court.

■ Failure to adduce proof material to the case within a litigant's reach raises a presumption that such proof, if produced, would be unfavorable to him. Johnson v. Marx, Levy & Bro., 109 La. 1044, 34 So. 68; Rubenstein v. Files, 146 La. 734, 84 So. 33; Hawthorn v. Hillyer-Deutsch-Edwards, 9 La. App. 660, 119 So. 772.

■ There is no contention on part of the defendants that plaintiff was not injured in the manner and to the extent claimed by him. No evidence was introduced to contradict that given by plaintiff. This shows he was confined to a sanitarium for three months and nine days; that the injured leg is 2¾ inches shorter than the other one and out of line to an appreciable extent. At time of trial, two years after the injury, the knee was stiff, and the original wounds were not healed; there being infection necessitating three drains. He could walk only with difficulty, and then for short distances, accompanied by pain; and had been unable to work. He was fitted, before the injury to do manual labor only. We do not think, however, the evidence shows that the injured leg will not become entirely well eventually, but it is clear plaintiff, to the date of trial, was completely disabled to perform manual labor.

Under section 8, subd. 1 (d), pars. 8 and 15, of Act No. 85 of 1926, he is entitled to compensation for not more than 175 weeks at rate of 65 per cent. of his weekly wage of $16.50.

For the reasons assigned, the judgment of the lower court is annulled, avoided, and reversed, and there is now judgment in favor of plaintiff and against the defendant Mill Creek Lumber Company and its individual copartners, S. M. Tomme, Mrs. S. M. Tomme, Chas. E. Tomme, and Carroll D. Tomme, in solido, for compensation at the rate of $10.-72 per week for the period of disability, not exceeding 175 weeks, beginning May 14, 1929, less the number of weeks for which such compensation has been paid to August 13, 1930, as admitted in plaintiff's petition, together with 5 per cent. per annum interest on such weekly payments from date due, and costs of suit. The fee of plaintiff's attorney for services rendered herein, being 20 per cent. of the amount recovered under this judgment, is hereby recognized.