**JOHNSON v. HILLYER, DEUTSCH, EDWARDS, Inc.***

No. 1939.

Court of Appeal of Louisiana.
First Circuit.

Jan. 11, 1939.

Julius T. Long, of Shreveport, for appellant.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellee.

*Rehearing denied 186 So. 365.

OTT, Judge.

Plaintiff sues for compensation at the rate of $11.70 per week for four hundred weeks, less the sum of $21.12 already paid. Plaintiff alleges that he is totally and permanently disabled from doing work of any reasonable character on account of an abdominal hernia on both his right and left sides produced by a strain in pushing a buggy heavily loaded with lumber to or near the rip saw in defendant's sawmill, and while he was working for said defendant on October 4, 1937.

■ There is no dispute as to the fact that plaintiff did receive an injury while working for the defendant, nor is there any dispute about the weekly wages he was then receiving. The only question in dispute is the extent of the injury received and whether or not this injury rendered plaintiff unable to perform manual labor since the injury, the kind of labor that he was performing at the time of the injury. In fact, we might go further and say that the only question presented is whether or not plaintiff sustained an abdominal hernia on either side—complete or incomplete—by reason of the injury, as there is no difference in an incomplete or reducible hernia and a complete or irreducible one from the legal standpoint, if either kind would incapacitate the injured employee from doing hard manual labor, and unquestionably either kind of hernia would produce this result. Parker v. Weber-King Mfg. Company, 19 La.App. 177, 139 So. 660.

The trial judge held that the plaintiff had failed to prove his claim by a preponderance of the evidence and dismissed his suit. The case is before us on an appeal by plaintiff from that judgment of dismissal.

The plaintiff, a young man about 21 years of age, testified that he was pushing a load of lumber on a buggy to the rip saw when the load of lumber started falling back on him, and he pushed the load as hard as he could when he felt a severe pain in the lower part of his stomach on both sides; that he pulled down his clothes and showed the foreman who came up the knots on each side of his abdomen, and the foreman sent him to Dr. Gray, the company doctor; that the doctor told him that he had a hernia on both sides and told him to go to bed and lay his feet up on a pillow and stay in bed at least five days, and put hot towels on his stomach; that he did as the doctor ordered, and after a few days the lumps

in his side had gone down some, and he returned to the doctor, who gave him a suspensory to wear for two weeks. After that time he went back to the doctor, who told him to go back and try to work; that he was unable to work on account of the pain in his side when he strained or exerted himself; that the lump in his side became larger when he tried to work; that the lumps are still on his stomach.

Another employee working with plaintiff testified that he saw plaintiff endeavor to shove the load of lumber and saw him grab the lower part of his stomach; that plaintiff pulled down his clothes in a few minutes and showed them where he was hurt, but the witness did not pay much attention to the place where plaintiff claimed to have the pain, but he does say that plaintiff was pale in the face.

From this uncontradicted testimony of plaintiff and the other employee working with him, it is clear that plaintiff did suffer some objective symptoms of an injury in the abdominal region. In fact, the defendant admits that the plaintiff suffered a mild strain to the muscles and fascia in the right inguinal region, but it denies that the injury produced a hernia.

It is on the medical evidence that the conflict exists as to whether plaintiff has an incomplete hernia on his right side and a potential hernia on his left side. It was because of this apparent conflict in the testimony of the six doctors who testified in the case that caused the trial judge to hold that the plaintiff had failed to prove his disability by a preponderance of the evidence. After discussing in his opinion the testimony by each one of the experts, the trial judge says:

"It will be observed that three of these medical expert witnesses testified that there was a definite bulging on the right side and a slight bulging on the left side; that in their opinion, the plaintiff was suffering from an incomplete direct hernia on the right side and a potential hernia on the left side; that in their opinion, the plaintiff was unable to do hard manual work, but might do light work. There were three of these medical expert witnesses called by the defendant and all these witnesses were positive that there was no evidence of any hernia, either potential or otherwise; and that the plaintiff was able to perform any type of work that he might desire to do."

■ Obviously, as the learned trial judge well says, there is a conflict in the

diagnosis and opinion of the six medical experts as to the vital and only issue in the case; i. e., whether or not plaintiff has an incomplete hernia caused from the injury incapacitating him from doing hard manual labor. These experts are divided in their opinion—three to three. Where there is a conflict in expert medical testimony, and there is no apparent way to reconcile it, the court is not bound by the number of opinions on the one side or the other any more than it is bound by the number of lay witnesses who testify to a controverted fact at issue in a case. It is the duty of the court to arrive at the actual truth of the question involved, whether the disputed fact is sought to be proved by medical or lay testimony, and the same rules apply in either case insofar as the interest or want of interest of the witness, his opportunity for observation, and his incentive for testifying are concerned.

The three physicians who testified that plaintiff has a direct incomplete inguinal hernia on his right side and a potential hernia on his left side are all doctors of long practice and wide experience; one has been practicing since 1905, one since 1912, and the other has been practicing for more than 50 years. So far as the record shows, none of these three doctors has any interest whatever in favoring the plaintiff's side of the case, unconsciously or otherwise. These long years of practice must have increased their conservatism in expressing their opinions, as well as broadening their experience in making a diagnosis.

All three of these doctors examined the plaintiff on the day of the trial, some three months after the injury. Two of the doctors had examined plaintiff before, one shortly after the injury, and the other some ten days before the trial. They all made the usual examination for hernia, and their findings and their opinions are exactly the same, and we are strongly persuaded by this practically unanimous opinion of these three doctors of long experience. Moreover, their opinion is strengthened from the fact that the evidence shows and defendant admits that the plaintiff did suffer a strain in his abdominal area, to say nothing of the testimony of the plaintiff himself who testified very positively to the pain in his side and the presence of lumps on straining. We see no reason to disregard plaintiff's testimony entirely, for if we concede that the medical testimony is evenly balanced, and should be disregarded altogether, there is precedent for allowing him compensation on his statement of his disability alone.

While we must concede to the three doctors who testified that plaintiff has no hernia equal learning and honesty of opinion as that of the three doctors with whom they disagree, yet we cannot overlook the fact that all three of the doctors who testified for defendant are much younger in practice than those who testified for plaintiff—two of them having practiced only since 1930, and the other since 1925. One of these is the regularly employed physician of defendant who treated plaintiff for the injury, and who put him to bed and instructed him to wear a suspensory for two weeks. While this doctor denies that he ordered plaintiff to raise his feet while in bed, yet he admits that there was a strain in the muscles and fascia of the inguinal region and that he ordered the young man to wear the suspensory. This indicates to us that the doctor suspected the possibility, if not the presence, of a hernia in this region. It is also proper to note in evaluating the opinion of defendant's physician that he admits having testified for the defendant in possibly fifty cases, and in practically all of them his opinion was favorable to the defendant. The doctor had not examined the plaintiff for more than two months before the trial, and, of course, could not tell what his condition was at that time.

The other two doctors examined plaintiff on November 26th, almost two months after the injury and more than a month before the trial. Their opinion is that plaintiff did not then have any kind of hernia and was able to do hard manual labor. Both of these doctors examine employees for industrial concerns, both having practiced only since 1930. The three doctors who testified for plaintiff had the last chance to determine plaintiff's condition at the time of the trial, and had made more examinations of plaintiff on which to base their opinion.

We are fully aware of the well-established rule that the finding of fact by the trial judge is entitled to great weight and is not to be disturbed unless manifestly erroneous. But this rule loses much of its force when the trial judge makes an erroneous application of the rules of law in his interpretation of the evidence and the weight to be given to it. In the first place, we think the trial judge was in error in holding that the failure of the plaintiff to

summon the foreman and the other employees present when plaintiff was injured creates a presumption that their testimony would have been unfavorable to plaintiff on the question of the nature of the accident and the extent of the injury.

While it is true that the failure of a litigant to produce available evidence in his possession or within his power to produce creates a presumption that such evidence would be unfavorable, however, there is no such presumption to be drawn from the failure of the plaintiff in a compensation suit to summon the foreman or employees of the employer, but, on the contrary, if there is any presumption to arise at all, it would be against the employer for failing to summon its own employees. Mahaffey v. Mill Creek Lumber Company et al., La.App., 147 So. 834; Hawthorn v. Hillyer-Deutsch-Edwards, Inc., 9 La.App. 660, 119 So. 772.

While we do not think that the failure of either side to summon these witnesses has any great importance one way or the other as the nature of the accident and the condition and actions of plaintiff at the time are shown by other witnesses, yet we are led to believe that the trial judge gave undue importance to this circumstance. We are further inclined to believe that the trial judge, in his effort to be perfectly fair to both sides and to the physicians who testified, refrained from comparing and weighing the expert testimony, but felt it his duty to give equal weight to the opinion of each expert.

Our consideration of all the testimony satisfies us that plaintiff is suffering from a direct inguinal incomplete hernia, and that this condition rendered him unable to do hard manual labor at the time of the trial. If, as testified by the three physicians and plaintiff himself, an attempt on his part to do hard manual labor would cause pain and a possible complete hernia, there is no reason for him to undergo that pain and incur that danger.

The petition asks that the court fix the fees of the experts summoned by him and tax these fees as cost. These fees, as well as any other proper cost, can be fixed and taxed under a rule filed for that purpose in the lower court. The trial judge is not only entitled to fix these fees, but he is in a much better position to do so than we are.

For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered that plaintiff recover compensation against the defendant at the rate of $11.70 per week, for a period not exceeding 400 weeks, beginning October 4, 1937, subject to a credit of $21.12, with interest thereon at the legal rate on each weekly payment from its due date until paid; that the fee of the attorney for plaintiff be and the same is hereby fixed at 20% of the amount paid on this judgment, and to be deducted from plaintiff's claim; defendant to pay all cost.