Plaintiff claims to have been injured on March 3, 1941, while cutting logs for the defendant lumber company, as a result of which he sustained a left inguinal hernia. He sues for compensation for total, permanent disability at the rate of $10.29 per week for a period of 400 weeks, however, counsel for plaintiff now concedes that the correct weekly wage was $13.20, and the basis of his compensation should be $8.58 per week.
The only issue in the case is whether or not the plaintiff now suffers from a hernia which resulted from an accidental injury received by him as he claims. The trial judge found that plaintiff had failed to prove with legal certainty that he sustained an injury which produced a hernia and dismissed his suit. From this judgment of dismissal, the plaintiff has appealed.
Plaintiff testified that he hooked his ax on the corner of a log he was sawing to keep the saw from pinching, and as he pulled on the ax, he felt a pain in the lower part of his stomach; that he sat down about twenty minutes and told his partner that he had hurt himself; that his partner took him to the company doctor, and the doctor examined him and told him that he had a strained muscle in his stomach and told him to come back in a few days, which he did, and the doctor strapped him up and told him to have his wife make a girdle and for him to wear it around his stomach. He states that he has a severe pain in his left side when he attempts to lift anything and cannot do any kind of hard work.
The man who was sawing logs with the plaintiff testified that, as the latter was pulling on the log with his ax, he said that he had hurt himself in the stomach; that plaintiff looked pale and stated that he would have to knock off from work. This account of the happening of the accident as given by the plaintiff and his saw partner is not disputed or questioned anywhere in the record. Unless we believe that both of these witnesses are falsifying, we must assume that plaintiff sustained some kind of a strain or accident which was sufficiently severe to cause him to suffer pain in his lower abdomen, turn pale, quit work and go to see the company doctor a short time thereafter.
There is nothing to show that plaintiff had suffered from a hernia or any other disabling disease prior to this occurrence. The question then is whether or not the strain which he claims to have received while pulling on the ax stuck in a log caused a hernia which now incapacitates him from performing hard manual labor, such as he was doing at the time of receiving the alleged injury. Three doctors testified that plaintiff has a left inguinal hernia, while three other doctors testified that he has no hernia, but does have a varicocele of the left spermatic cord. We will review briefly this medical testimony.
Dr. Strother examined plaintiff at least three times, twice in March and once in May, 1941. He found that plaintiff has a *Page 729 
complete left inguinal hernia and an incomplete right inguinal hernia. When plaintiff came to him in May, the hernia on the left side was down and plaintiff was suffering much pain. The doctor reduced the hernia to relieve the pain. It is significant to note at this point that plaintiff also testified that when he went to Dr. Strother in May he had a bulge in his left side and Dr. Strother laid him down on a table and shoved the hernia back in. Plaintiff's wife also testified that her husband was suffering so much with his side in May that she carried him to see Dr. Strother; that he had a bulged place in his left side about the size of the end of her thumb.
If there were no other evidence in the record of a hernia besides that to which we have referred, we hardly see how it could be found that plaintiff did not have a hernia in May, 1941, unless we disbelieve Dr. Strother's testimony when he says that he actually reduced the protruding mass with his fingers. Surely, any doctor who has a license to practice medicine knows when he reduces a hernia protruding into the inguinal canal. Moreover, we would have to either ignore or disbelieve the testimony of plaintiff and his wife when they state that there was a bulge in plaintiff's lower left side, as well as the statement of the plaintiff that Dr. Strother put him on a table and, as the witness expresses it, "shoved the hernia back in". This expression of a rather illiterate layman sounds to us just about the way a layman would express himself in telling what was done to him by a doctor under these circumstances. There is nothing in the record to show that a varicocele in the left side would cause a lump in the inguinal region nor cause a protrusion of viscera into the canal.
In addition to this strong evidence indicating the presence of a hernia, we have the testimony of Dr. Officer and Dr. Hargrove who found that plaintiff has a hernia. Dr. Officer examined plaintiff at least twice, in March, 1941, and also just before the trial, and he found that plaintiff has an incomplete left inguinal hernia and a potential right inguinal hernia, or enlarged rings on that side. He found on his last examination that the hernia was worse than it was on his first examination in March. Dr. Hargrove examined plaintiff in September and found that plaintiff has a complete left inguinal hernia and an incomplete right hernia.
Considerable importance seems to be attached by defendant's counsel to the fact that plaintiff signed an application for social security shortly after he filed this suit in which he stated in answer to a question in the application that he was physically and mentally able to work. The trial court did not attach much weight to this statement. Neither do we. Plaintiff says that he signed this statement without reading it or having it read to him. He thought he was signing a formal document in order for him to draw out what he had paid in, and just as soon as he found out that this statement was in the application, he made no further effort to draw social security benefits.
As against the proof that plaintiff has a hernia, the defendant offered the testimony of three doctors. Dr. Mangham, the company doctor, saw the plaintiff shortly after he came to the hospital on the day of his injury. The doctor states that he examined plaintiff for a hernia and could find nothing wrong with him, except contusion of the muscles of his abdomen. The plaintiff claimed to be sore in the muscles of his lower abdomen and would jump when these parts were touched. The doctor told him to go home and rest up a few days and come back. The plaintiff did come back in a few days and the doctor strapped his abdomen as plaintiff claimed to be sore in that region and continued to complain of soreness. The plaintiff came back off and on for several weeks.
While this doctor states that he could not find that plaintiff had a hernia, yet he does admit that there was a contusion on plaintiff's abdomen and that he constantly complained of pain and soreness in that region. He was not questioned on the point and did not deny that he told plaintiff to have his wife make a girdle and for him to wear it around his abdomen. This fact, coupled with the fact that the doctor kept plaintiff's lower abdomen strapped for several weeks, indicates that he must have believed there might be a possibility of a hernia, particularly in view of the fact that the doctor states he found that plaintiff has enlarged inguinal rings.
Doctors Gray and Rand also examined plaintiff for the defendant company and testified that they could find no hernia, but *Page 730 
did find that he has a varicocele of the spermatic cord on the left side.
In view of the above summary of the evidence in the record, we find ourselves unable to agree with the learned trial judge in finding that plaintiff had failed to prove that he sustained an injury which produced a hernia. Our learned brother below seemed to be of the opinion that the account given by plaintiff of the strain which he claims to have suffered while pulling on an ax stuck in the end of a log could hardly be sufficient to cause a hernia. However, it has been our observation in passing on cases of this kind, that hernias have been caused by a much less strain than that of pulling on an ax. Indeed, we have had numerous statements from doctors that merely coughing or straining at stool will sometimes cause a hernia. This is more important when we consider the fact that all the doctors testified that plaintiff has enlarged inguinal rings which is a condition giving rise to a potential hernia, in which condition a much less severe strain would cause a hernia than in a person having normal inguinal rings. The trial judge was also of the opinion that, inasmuch as the medical experts were equally divided in their opinions as to the existence, vel non, of a hernia, and as the doctors who testified for the defendant have had a greater experience in examining and operating on persons for hernia, their opinions should be given greater weight than that of the doctors who testified for the plaintiff, two of whom do little, if any, operations for hernia, and one of whom has been practicing for only a short time.
We find it necessary to disagree with the learned trial judge in his evaluation of the testimony of the medical experts. It is unnecessary for us to repeat here what has already been said with reference to the examination made by Dr. Strother of plaintiff and his actual reduction of a protruding mass in the left inguinal canal. While Dr. Officer has not had the same experience in examining and operating on men for hernia as have the three doctors who testified for the defendant, yet we find that Dr. Officer has been in the practice of medicine for many years, during which time he has had the opportunity of examining many patients for hernia. While Dr. Hargrove is a young doctor, yet he has been well prepared for his profession, and his testimony indicates to us that he is thoroughly familiar with that part of medical science which should enable a doctor to decide whether or not a man has a hernia. Moreover, as far as the record shows, none of the three doctors who testified for the plaintiff have any interest in this case. At least one of the doctors for the defendant was the regularly employed doctor of the company, and the other two doctors admit that they examined employees for various employers and insurance companies, and that their testimony is usually given on behalf of the employer and the insurance company. This fact is no reflection on the professional integrity of these doctors, but it is a factor to be considered in weighing their testimony, as was held in the cases of Johnson v. Hillyer, Deutsch, Edwards, Inc., La.App., 185 So. 652; Phillips v. Yazoo M.V.R. Co., La.App., 183 So. 43.
We do not wish to be placed among those courts who have expressed rather strong views as to the small probative value to be placed on expert testimony. Medical testimony and the opinions of medical experts are very important in determining the nature and extent of physical injuries and their disabling and permanent character. We repeat here what we said in the Johnson case, supra [185 So. 654]:
"Where there is a conflict in expert medical testimony, and there is no apparent way to reconcile it, the court is not bound by the number of opinions on the one side or the other any more than it is bound by the number of lay witnesses who testify to a controverted fact at issue in a case. It is the duty of the court to arrive at the actual truth of the question involved, whether the disputed fact is sought to be proved by medical or lay testimony, and the same rules apply in either case insofar as the interest or want of interest of the witness, his opportunity for observation, and his incentive for testifying are concerned."
The rule as to evaluating expert testimony is concisely summed up in 20 Am.Jur. p. 1056, Section 1206, as follows:
"Notwithstanding the critical comments upon the value and credibility of expert opinion testimony to be found in many opinions, it is generally recognized that the relative weight and sufficiency of expert and opinion testimony is peculiarly within the province of the jury to decide, considering the ability and character of the witness, his actions upon the witness stand, the weight and process of the reasoning by *Page 731 
which he has supported his opinion, his possible bias in favor of the side for whom he testifies, the fact that he is a paid witness, the relative opportunities for study or observation of the matters about which he testifies, and any other matters which serve to illuminate his statements. In other words, the same tests which are commonly applied in the evaluation of ordinary evidence are to be used in judging the weight and sufficiency of expert testimony."
For the reasons herein given, we have reached the conclusion that the plaintiff has proved with legal certainty that he did sustain a strain while pulling his ax on a log, and that as a result of this strain he suffered a hernia on his left side which disables him from performing the kind of labor to which he was accustomed, and he is entitled to compensation for total, permanent disability at the rate of $8.58 per week.
For these reasons, the judgment appealed from is hereby annulled, avoided and reversed, and it is now ordered that plaintiff have and recover judgment against the defendant for compensation in the sum of $8.58 per week for a period not exceeding 400 weeks, the first payment beginning one week after March 3, 1941, and weekly thereafter, with legal interest on each payment from its due date until paid; that the fees of the attorney representing the plaintiff be fixed at 20 per cent of the amount collected, expert witness fees to be fixed by the trial court on a proper rule filed to tax costs; all cost to be paid by the defendant.
Le BLANC and DORE, JJ., concur.