No. 4062

Second Circuit
(Second Division)

———

MILLER v. FRANK GROCERY CO., INC.

———

(July 16, 1931. Opinion and Decree.)
(August 12, 1931. Rehearing Refused.)

———

T. Overton Brooks, of Shreveport, attorney for plaintiff, appellee.

Jackson & Smith, of Shreveport, attorneys for defendant, appellant.

TALIAFERRO, J. Plaintiff brought this suit against defendant to recover compensation at the rate of $16.50 per week for a term of 400 weeks on account of alleged permanent injuries sustained by him on November 26 or 27, 1929, arising out of and in the course of his employment with defendant. He alleged that his duties under his employment were to operate trucks and automobiles of defendant, a wholesale grocery and produce distributing company in the city of Shreveport, and to load and unload same; that while in the act of lifting and carrying a heavy bag of sugar to be placed on a truck, he fell; that said fall and consequent injury produced a hernia on the right side of his abdomen and in addition thereto his back was severely sprained and wrenched; that immediately after said fall he gave notice thereof and was removed to a hospital where he was operated on for hernia on

January 3, 1930; that as a result of said injury his right side, leg, knee, back, spinal column and spinal cord have been permanently impaired and affected, and, at the time of filing this suit, he states that he could not perform work of any reasonable kind or character; that he is a colored man, without education, and has earned a living by manual labor only, and on account of said injuries has been deprived entirely of a means of livelihood. He also sued for $250 medical, hospital and surgical fees.

Defendant admits employment of plaintiff by it and for the wages alleged; that defendant is an uneducated colored man and that he underwent an operation for hernia on or about January 3, 1930, which operation, it is averred, was successful; that a dispute exists between it and plaintiff with respect to its liability for the payment of compensation. All other allegations of fact of the petition are denied.

There was judgment for plaintiff for $10.72 per week for the period of his disability not exceeding 400 weeks, less a credit of $35, with interest on all past due payments from January 3, 1929. Defendant appealed.

On November 26, the date of plaintiff's injury, he drove defendant's Ford truck to the Electric Maid Bakery shop to deliver some sugar and to take in exchange for it other sugar which the bakery had purchased of defendant. As he would carry a sack of sugar into the bakery he would bring one out and deposit it in the truck. It was necessary to ascend and descend a flight of steps (the evidence does not show the height) to accomplish the exchange of the sugar and while making a return trip towards the truck he slipped on the greasy floor, according to his testimony, and fell down three or four steps. The sack of sugar weighed 100 pounds and rolled down the steps to the floor. With some assistance defendant completed the loading of the sugar on the truck and returned it to defendant's warehouse about the noon hour. His foreman, a Mr. McIntyre, was absent at the time and he testified that he reported his fall to Mr. Godwin and to Mr. Rogers, defendant's shipping clerks who, he said, were busy and gave no heed to what he was saying. However, Rogers denied, or could not recall, that plaintiff had informed him of his accident. Mr. Godwin recalled hearing that plaintiff had been hurt, but could not say who told him, nor the time, but says it could have been on the day it happened.

Will Vine, a colored boy, an employee of the Electric Maid Bakery Shop, was present at the time plaintiff claims to have been injured there. He testified that plaintiff brought some sugar to the shop and carried a load back; that the sugar was kept upstairs; that he, witness, heard a little noise "up there," and plaintiff came down holding his side and said, "I fell up there and hurt myself." This witness did not see plaintiff fall, but stated plaintiff came on down the steps immediately after the 100-pound sack of sugar had reached the floor.

Mr. McIntyre, director of defendant's delivery trucks and labor, as a witness, testified that on December 1 plaintiff mentioned his trouble to him, stating that he had hurt his side in a fall at the Electric Maid Bakery Shop delivering sugar; that he continued to complain to him at intervals but carried on his work; that defendant sent plaintiff to Dr. Green on December 7. He returned after seeing this doctor and continued to work at his regular employment until December 28, at

which time he told this witness that he would not be able to work any more and would have to quit. He again consulted Dr. Green and the operation was decided on. Dr. Green did not perform the operation himself. Plaintiff testified that this physician, after examining him physically declared that he had hernia and that an operation would be necessary, but that the doctor tried to "get around it" by treating him. He states that he has not tried to work since the operation because he was disabled and afraid he would "bust that place again"; that his hip hurt and ached him. Mr. Brabston, treasurer and general manager for defendant, authorized the operation and paid the expense bill for his company. He stated that he received information that plaintiff had been injured in some way about two weeks after it is alleged to have occurred.

Defendant dispensed with plaintiff's services after the operation. He has not been able to do manual labor since.

Plaintiff had been in the employ of defendant for about ten years. He was regarded by his employer's officers as an honest, reliable laborer, who did his work well. Prior to date of alleged injury he was, to all appearances, in good physical condition, though not robust.

Dr. H. A. Durham, chief surgeon of the Shriners' Hospital for Crippled Children, at Shreveport, specializing in bone and joint surgery, made physical examination of plaintiff on day of trial (October 23, 1930), to ascertain if there was injury to his back. He also examined the x-ray pictures made of plaintiff's spine. Dr. Durham found "considerable rigidity in the spine from above the mid-portion down to the hips; that he had no extreme range of motion, and attempting a lateral motion, bending, was painful, evidencing a defi-nite restriction; that there is definite rigidity in the lower dorsal and lumbar portions of the spine." He stated that the x-ray pictures accounted definitely for the impaired motion; that plaintiff had definite bony changes in the back, a spurring or lipping of the twelfth dorsal, third, fourth and fifth lumbar vertebrae; that a bridge between two of the vertebrae was about half an inch wide and had the appearance of having been recently fractured—within a few months; that this fracture was through the area formerly fused, an arthritic condition; and that it could have been caused by an accident, such as a fall, and, if so, pain like that complained of by plaintiff would have followed; that if a person affected with such abnormal conditions, as was found in plaintiff's back, suffered an accident such as plaintiff claimed he had, he would expect, as a result, the pains and aches complained of by plaintiff, to follow.

Dr. Durham also found hernia in plaintiff's right side, "definitely pronounced but not extremely large," just below scar left from the operation for hernia by Dr. Pirkle. He abbreviated his findings of conditions in plaintiff's back as being "a trauma superimposed on an old arthritis," a condition commonly seen in men that do heavy work and take poor care of themselves; that the arthritic condition found in plaintiff's vertebrae existed a long time before he was injured, and is discernible from the twelfth dorsal vertebrae to the scrotum; that such conditions are attributable to infection in system and may not cause pain, but when enhanced by irritation, a strain, trauma or wrenching, become painful; that the breaking of the fusion of two vertebrae would be equivalent to a fracture and pain would result, which should be felt by the patient within a very brief time after the injury;

that such pain would be referred by the nerves to other parts of the body.

Dr. Durham also found that plaintiff had been previously operated on for hernia in the left side. In his opinion plaintiff's inability to do manual labor was the result of an injury to him—the fracture—plus the trauma he sustained, and that this condition is probably permanent.

Dr. Edwards made x-ray pictures of plaintiff's back. He corroborates the testimony of Dr. Durham in respect to the arthritic condition found in plaintiff's vertebrae, the fracture, the possible causes thereof, and effects. He stated that one whose spine was affected in the manner of plaintiff's could not continue to do manual work, would have to quit, and that on account of plaintiff's age (57 years) his condition was probably permanent.

Dr. Cassidy examined plaintiff twice. Once about a week before trial and then on day before trial. He found hernia of the right side immediately below the scar of former operation. This was a recurrence of former hernia. It protruded somewhat through external inguinal ring, but did not descend into the scrotum, and could have been caused by stitch of old wound not holding. It was about half the size of medium size lemon. His testimony fully corroborates that of Dr. Durham and Dr. Edwards with regard to conditions of plaintiff's back, disclosed from physical examination and x-ray views. He states that the arthritic condition in and about the joints is attributable to pus focus in the body of long duration, which has been aggravated, and flared up, by some injury, fracture of bones, undoubtedly due to traumatism. He thought plaintiff's condition was permanent.

Dr. Pirkle, witness for defendant, stated that he operated on plaintiff for hernia of the right side on January 3, 1930, and for hernia of left side some four years prior; that the last operation was a successful one; that he had no information concerning, and did not know of, any trouble to plaintiff's back at the time of the operation; that he found a little knot or lump near the point of the operation on right side, was positive it was not a return of the hernia, but a little mass where the sutures held the tissue together; that he could find no objective symptoms of injury to plaintiff's back, though he made physical examination of him the day before the trial. He admitted that he had certain pride in his operations and seeing them "hold up." He added that it generally requires three months for a man to recover from an operation for hernia.

Dr. T. E. Williams, associated with Dr. Pirkle, made x-ray pictures of plaintiff's pelvis and lower lumbar region. He found conditions in and about this part of plaintiff's body about the same as the other physicians who testified for plaintiff, but thought these conditions could originate from natural exercise of a man without any trauma; that the apparent fracture, seen from the pictures, could have been caused by natural bending of the body, but added that plaintiff's back conditions—the fracture—could have been caused by a fall, such as plaintiff claims to have experienced.

It is not seriously disputed that plaintiff, at date of trial of this case, and since he underwent operation, was disabled to such extent that he could not do manual labor, the kind of work he followed until injured. Defendant's contention is that plaintiff's ailments came on gradually and not as the result of accident or injury arising out of and in the course of his employment. There is some dispute as to whether plaintiff notified any of defend-

ant's officers of his accident before December 1, when Mr. McIntyre admitted he disclosed the fact to him, but it is not disputed that he complained regularly of his pains and aches to defendant's employees until December 7, at which time he was instructed to see Dr. Green for advice and treatment. Dr. Green was not called as a witness and the failure to do so is not explained.

The evidence, in our opinion, fairly well establishes plaintiff's allegations with respect to him slipping and falling at the Electric Maid Bakery Shop on November 26, 1929. It will not be seriously doubted that if he did fall there with a 100-pound sack of sugar on his shoulder that such could have easily produced the various troubles he claims to be suffering from, and in view of the fact that he was amply able physically to efficiently discharge the duties he owed his employer prior to the accident, and that he was considered by defendant as being an honest, reliable man, coupled with the noticeable change in his physical appearance and condition very soon after the accident, and his own undisputed testimony that he had no hernia prior to that date, we have no difficulty in reaching the conclusion that, within the meaning of the Workmen's Compensation Law (Act No. 20 of 1914, as amended), the injuries sustained by him, causing his disability, arose out of and in the course of his employment. And this is true, whether the hernia alone, or the fracture in the vertebrae alone, or both, produced or contributed to such disability.

Dr. Pirkle testified that plaintiff should have recovered from the effect of the operation for hernia within three months so as to have resumed the work he was doing for defendant. It is certain he had not recovered his health sufficiently at date of trial, some ten months after the accident, to do manual labor. This condition primarily was due to one of two causes: the operation on January 3 was not a success and there was recurrence of the hernia, or plaintiff's continued disability was contributed to, or caused entirely by, other injuries received by him, or latent disease was aroused and became active, as a result of the accident at the bakery shop, if the operation was a success.

In either case defendant would be liable for the payment of compensation to plaintiff during the period of his disability.

"In compensation case under Employers' Liability Act (Act No. 20 of 1914), it is immaterial whether employee's continued disability directly resulted from the injury or from a condition resulting from the injury, or whether the injury was the sole cause, or merely a contributing cause." Blackman v. Pope Engineering & Supply Co., 11 La. App. 92, 120 So. 682; and recent case of Anderson v. La. Oil Refining Corporation, 134 So. 343, decided by this court in May, 1931.

Act No. 85 of 1926 contained special provisions governing actions to recover compensation for disability resulting from hernia, which were not in the original Act nor in amendments prior to that time; but these special provisions were omitted from Act No. 242 of 1928, and are therefore not in effect, being repealed by implication. As the law now stands, an employee whose injuries result in hernia, producing total disability to do work of any reasonable character, may recover 65 per cent. of his weekly wages during the period of disability, not exceeding 400 weeks. James v. Hillyer-Deutsch-Edwards, 15 La. App. 71, 130 So. 257.

Plaintiff admits in brief that defendant has paid all medical, hospital, and surgical expenses on account of his injuries and disability to date of trial.

Judgment appealed from is affirmed.