Plaintiff, a colored man, age thirty-five years, was injured on June 3, 1940, while performing the duties embraced in a contract of employment with the defendant, Terminal Paper Bag Company, Inc. He seeks to be adjudged entitled to workmen's compensation on the basis of permanent total disability or sixty-five per cent of his weekly wage for 400 weeks, being $7.80 per week. Medical and physicians' bills to the extent of the statutory maximum or $250 is included in the demand. In addition to the employer, its carrier of compensation insurance, Central Surety and Insurance Corporation, was made party defendant. In solido judgment is prayed for.
The defendants' answers reduce the issues solely to whether plaintiff has recovered from his injuries sufficiently to enable him to do manual labor, this being the only means whereby he may earn a livelihood. The employment, wage rate, hazardous character of the employer's business and original disabling injury are all admitted. Compensation at the rate of $7.80 per week was paid to October 21, 1940, being 20 weeks.
There was judgment for plaintiff and defendants appealed.
In limine, appellants filed and urged an exception of vagueness. Because of an adverse ruling thereon, they here complain. The exception is leveled against the allegations descriptive of the injuries. After relating the facts of the accident, among which are that several bundles of paper bags weighing not less than 75 pounds each, fell upon his head, shoulders and back, from a distance of 20 feet, knocking him down, plaintiff alleges: "As a result of the bags falling on him as aforesaid, his spine, back, neck, head and other parts of his body were seriously injured and he has been totally unable to do any work of any kind since."
The exceptors contend that plaintiff should have been ordered to clarify his complaint by specifically alleging "the nature of any and all injuries claimed, whether or not he contends that any particular bones were broken or fractured", etc.
It is certain that plaintiff, as has often occurred with others, when suit was filed, did not know definitely whether any bones were broken or fractured and he may not know today. After reading the medical testimony in this case, somewhat prolix, we ourselves, cannot say with perfect confidence whether or not any bones were fractured. When eminent physicians of long experience, aided by X-ray pictures, do not *Page 564 
agree on such an issue, how can an ignorant negro laborer be expected to do so? He should know whether he is disabled to do manual labor and knows further that if disabled, the accident produced such result. He alleged all facts within his knowledge and that is sufficient in a case of this character; one in which the technical rules applicable to pleadings generally are not strictly enforced. Pierre v. Barringer, 149 La. 71, 88 So. 691; Stockstill v. Sears-Roebuck Company, La.App., 151 So. 822; Clark v. Alexandria Cooperage Lumber Company, 157 La. 135,102 So. 96.
We are in accord with the trial judge's ruling on the exception and affirm it.
Plaintiff was injured by several bundles of paper bags, measuring 18" by 16 1/2", and weighing about 70 lbs. each, falling against him and knocking him down on the floor. The accident happened in defendant's warehouse wherein large quantities of paper bags are stored for shipping. In order that light weight four-wheeled trucks, operated by man power, may be conveniently loaded, aisles 6 1/2' wide were left open. One of such trucks was being loaded when the accident ocurred. L.C. Taylor, an employee, was standing erect on a stack of bags 6' high adjacent to which was another stack 12' high. He was lifting bundles from the higher stack and handing same to plaintiff who would then place them on the waiting truck. The stack on which Taylor was standing became unsteady and began to wobble. He jumped therefrom and averted injury to himself, but in so doing unbalanced the higher stack from which several bundles, together with some from the lower stack, fell toward the aisle and against and upon the plaintiff, who, as stated above, was knocked to the floor on his stomach and face.
Plaintiff was assisted to a standing position and "hobbled", as said by one witness, with the assistance of two men, to a room near by where he lay down for some thirty minutes. He was then in like manner taken to an automobile and driven by an employee named Banks to the Vaughn-Wright Bendel Clinic in the City of Monroe, Louisiana, a few miles away, and placed in charge of Dr. Bendel, the employer's regularly retained physician, for treatment.
On the way to the doctor's office plaintiff experienced considerable pain and complained that his shoulders, back and knees were hurting him. He was a patient in the clinic for 14 days. Dr. Bendel testified that plaintiff then complained of pain only in the lumbar-dorsal regions. The back was strapped with adhesive tape. After discharge from the clinic he returned for treatment intermittently until September 19th. He was treated with diathermia machine or heat applications. The doctor thought improvement satisfactory, although he admits plaintiff continued to complain of pain. He advised the insurance company at that time that he believed plaintiff would be able to resume work in about two weeks. He denies that he told plaintiff to quit coming to his office for treatment. Dr. Bendel did not see plaintiff again until a few days before trial in February, 1941.
On June 8th, five days after plaintiff was injured, Dr. Bendel made or had made, five X-ray pictures of plaintiff's back from the lower dorsal section to and including the sacrum and coccyx. No pictures at that time were made of the neck or cervical vertebrae because, he says, plaintiff made no complaint of pain in that locality.
On September 19th Dr. Bendel made a general physical examination of plaintiff. At the suggestion of defendant's counsel, he was sent to Drs. Scott Hamilton and A.G. McHenry for additional examinations. Dr. Bendel also had X-ray pictures made on September 10th. These were of the sacro-iliac joint, the sacrum, coccyx, lumbar vertebrae and lower dorsal vertebrae.
On February 3d, X-ray pictures were made of plaintiff's cervical vertebrae because, it is said, at that time he was complaining of pain in that region.
When the case was tried Dr. Bendel testified positively that none of these X-ray pictures, 17 in all, disclosed evidence of any injury whatever to the bones of plaintiff's back, from the skull to the coccyx. It was his opinion that plaintiff's ailment should not prevent him from working. Present disability he accredits to lack of exercise and a continued "position of stiffness". However, Dr. Bendel gave the following testimony which materially modified what he previously said on the subject, to-wit: "It would probably take two or three or maybe four weeks for him to go back to work. What he has there now is not the result of injury but is the result of how he has handled himself. If it wasn't for that he should be able to go back to work * * *."
Dr. Hamilton specializes in orthopedic surgery. He made a clinical examination *Page 565 
of plaintiff on February 19th at which time he had the benefit of the X-ray pictures taken June 8th and September 10th. He says that plaintiff then complained of pain only in his head and lower back. While testifying, Dr. Hamilton viewed the X-ray pictures of plaintiff's neck, made on February 3d. He was unable to find in any of these pictures clinical evidence to support the complaint of pain and disability. It was his opinion that plaintiff was not disabled to do manual labor. The X-ray pictures, he thought, positively negatived the theory that bones of the back or neck were fractured or otherwise injured.
Dr. McHenry made a close physical examination of plaintiff on September 21st. He is equally positive that the pictures do not disclose any abnormalities or injury to plaintiff's spine. He did not, however, have the pictures of the cervical vertebrae to study on September 21st as these were not then made. He recognized a small line beginning in the third cervical vertebra and running down into the fourth but attached no importance to it.
Dr. W.L. Smith specializes in roent-genology. He made four pictures of plaintiff's abdomen and urinary tract at the request of Dr. McHenry. These pictures, or some of them, also showed the lumbar spine. None of them in Dr. Smith's opinion disclosed any traumatic injury of the organs included therein. While testifying, Dr. Smith also examined and interpreted the other 17 pictures introduced on behalf of the defendants. He found nothing revealed therein to indicate trauma of any part of the spine. In answer to a question, he said: "In the films that I have examined I have found no significant pathology. Now, insofar as the man's ability to work is concerned, I do not think I would be justified in making a statement."
Immediately after plaintiff ceased his visits to Dr. Bendel for professional attention, he, at the suggestion of his counsel, went to Dr. C.H. Mosely's clinic for examination. Dr. Mosely first examined him on September 24th and again six days later. X-ray pictures were made of his spine on each occasion. These pictures, as interpreted by Dr. Mosely, reveal a fracture of the third cervical and also of the fifth lumbar vertebrae, with displacement of the latter, and a crushing of the fourth lumbar vertebra. As a witness, he went into detail of explanation to support his reading of the pictures. He recognized the presence of hypertrophic arthritis between the third and fourth and the fourth and fifth lumbar vertebrae and nowhere else. The fractured lamina of the third cervical vertebra he found displaced upward and "has occluded the normal holes between the vertebrae enough so that it would press the nerve that comes out through that opening."
Dr. C.P. Gray's interpretation of Dr. Mosely's pictures substantially accords with Dr. Mosely's interpretation thereof.
Dr. Mosely, while on the witness stand, was handed some of the pictures introduced by defendants for reading. He found in them the same evidence of trauma of the spine as is disclosed by the pictures he made. On the other hand, physicians who testified for defendant were unable to perceive in Dr. Mosely's pictures any evidence of injury to plaintiff's vertebrae.
The preponderance of the medical testimony favors the contention that no bones of plaintiff's spine were fractured. Testimony pro and con is based upon X-ray pictures, which we, as a court, have learned from much experience are not infallible. Such pictures do not reveal injuries to muscles, ligaments, tissues, etc.
Plaintiff was a strong, vigorous man prior to the accident. He had worked for defendant, his employer, for one year and had rendered satisfactory services during that time. He is referred to as a "good worker". The heavy bundles fell suddenly upon him with such force that he was knocked violently to the floor on top of one bundle. He was unable to rise of his own power. It is certain he was seriously injured in his back from blows unusual in their character. His neighbors testified that they drove him to the offices of the several doctors he visited and elsewhere; that they generally found him in bed and that he constantly complained of pain in his back, neck and shoulder.
Drs. Mosely and Gray were of the opinion that plaintiff was disabled to do manual labor. Dr. Bendel agrees with these physicians in this respect, but thinks the disability not directly due to the original injuries. Dr. Smith would not venture an opinion on the subject. Plaintiff says that when he walks or moves about he suffers acute pain in the back and that for this reason he cannot resume work. The preponderance of the testimony, lay and medical, *Page 566 
supports the contention that plaintiff is now disabled to perform heavy manual labor. This being true, the cause for the disability is certainly traceable to the injuries received in the accident. Whether any bones were fractured is not pivotal of the issue of disability. If disability exists, that is sufficient.
This case involves an issue of fact only. The trial judge who saw and heard the witnesses in court, including plaintiff, resolved the factual question in plaintiff's favor. We are unable to perceive error in this conclusion.
The lower court allowed Dr. Gray $50 as expert witness fee and allowed Dr. Mosely, in addition to witness fee, the sum of $15, being the cost of X-ray pictures made by him. Both items were taxed as costs. Appellants complain of the fee allowed Dr. Gray to the extent of $25 and to support their position state that he testified on only one day of the trial. They contend that as the X-ray pictures made by Dr. Mosely were part of the preparation for suit, the costs thereof may not properly be taxed as court costs.
These items of cost were fixed by the lower court after hearing on rule contradictorily with defendants. Presumably, the rule was submitted on the face of the record. There is no testimony in the transcript touching the issues tendered by the rule.
The case was partially tried on three different days. We do not know which of the witnesses attended court on each day or for more than one day. Even though an expert witness be used as such for only one day, he is entitled to pay for other days he is present in court as he is required to leave his business and await the court's or attorney's action in placing him on the stand.
The trial judge under whose eye such proceedings are conducted, is in a position to properly determine the amount of fee due all experts who testify before him.
We think the cost of Dr. Mosely's X-ray pictures properly taxed as part of the court costs. These pictures were produced, examined by both sides, filed in evidence and became a part of the record, the property of the court. Dr. Mosely had the right to charge them to plaintiff and if he had done so, the cost thereof could properly have been included in the demand for hospital, medical and physicians' bills which the workmen's compensation law requires an employer to pay.
For the reasons herein given, the judgment appealed from is affirmed with costs.