This is a suit to recover compensation for total and permanent disability under Act No. 20 of 1914, as amended. The case presents only questions of fact and the lower Court in a lengthy written opinion has reviewed in detail the testimony of each and every witness who testified in the case. The opinion is so much in detail as to give the page number of the record where the testimony is found. The lower Court concluded that plaintiff was totally and permanently disabled from performing manual labor of a reasonable character, or such as he was qualified to perform. The opinion is as follows:
"Plaintiff has instituted and 'now prosecutes this suit against the defendant for compensation alleged to be due him as a result of an accident alleged to have occurred on September 4, 1943. He alleges that he was employed as a laborer in the paper mill and factory of defendant on said date and was earning an average weekly wage of $32.00; that in the course of his employment he was attempting to load a large and heavy roll of paper on a buggy when the buggy thus loaded fell upon him, striking his body and legs, causing the following injuries:
"(a) Impairment of the muscles, ligaments and tissues on both sides of his lower abdomen, causing a hernia on both sides;
"(b) Permanent impairment of the vertebrae, sacrum and sacroiliac joints of the lower back and of the nerves, ligaments and muscles of that area; and
"(c) Permanent impairment of the cartilage and ligaments in and about both knees.
"On account of these injuries, he alleges that he is permanently and totally incapacitated from performing labor of any reasonable character hereafter. *Page 302 
"Plaintiff further alleges that he was paid compensation for three weeks immediately following said injury and that thereafter, on September 28, 1943, he went to work again for the Southern Advance Bag and Paper Company, Inc., under the theory that he was doing light work in which capacity he continued until February 7, 1944, after which time he was again paid compensation until June 23, 1944, when such payments were stopped and defendant refused to make further payments. The weekly compensation payments were in the sum of $18.93 each.
"The defendant answered, generally denying plaintiff's allegations and alleged that while the plaintiff was in its employ on September 4, 1943, he reported an injury to his leg and that medical examination showed that his leg was sprained, for which he was treated for several weeks, and during that time was paid full compensation. It was further alleged that plaintiff returned to work and continued to work until February 7, 1944, when he again complained of injury to and pain in his abdomen. Compensation was again paid until June 20, 1944 when medical examination disclosed that he had no injury or if he had had, that he was completely recovered. The defendant averred that plaintiff's wages were $29.12 per week, and that his compensation in the sum of $18.93 per week was correct.
"Defendant then specially denied that plaintiff was ever injured or received any injury while in its employ and that in the event he did receive such an injury, he has completely recovered therefrom and that he has been paid all compensation he is or might have been entitled to under the law.
"On these issues the case has been tried and is submitted to the Court for decision.
"The plaintiff explained the accident as follows:
" 'I was loading rolls — dry-cleaner rolls that weighed about 630 pounds, when I got hurt. I had to end them up and put them on a two-wheeled buggy. There were bars of iron from one handle to the other. I had to stick a hook in the end of the roll and pull it over the buggy and when I was pulling it over on the buggy, my left foot slipped. I was standing straddled with my feet out and the buggy and roll fell on my left leg above the knee and the bar from one handle to the other fell just below the right knee and made a sink in the leg. One of the boys asked me if that was a scar. I told him that it was where the bar hit me. The boys lifted it off me and I went and sit down." He fell backwards and caught on his elbow. Ev. 4, 5.
"As to the happening of the accident, the plaintiff is corroborated by Mr. Gerald Powell, a white man, aged 33 years, who is now and was then employed by the defendant. Powell stated that they stack these rolls seven and eight rolls high and that Lawrence, the plaintiff, slipped and that the roll of paper slipped and fell on him and caught the plaintiff about the hips. He says he took the roll off Lawrence and that he thought the roll weighed about 240 pounds. Ev. 16, 17.
"The plaintiff testified that he was injured and suffered severe pains in the lower part of the back, in the groins and there was a bulging out in the lower part of his stomach, accompanied with a burning sensation. Ev. 5, 9. He testified that he hurt through and through his back, lower portion, in his stomach, in the small of his back and down to his knees and that when he walked his legs developed a quiver and became weakened and trembling. He said he suffered pain in the hernia area, principally on the right side but sometimes on the left side. Ev. 9-31.
"The plaintiff testified that he was unable to work; that from September 28, 1943 to February 7, 1944, he was given a light job, oiling at the mill, did not really do any work, and during that period, there were days he was not even able to go to the job on account of his injuries and the pain suffered by him, and that during those days he was off, he would have to lie in bed. He says since he quit work he has tried to work in his garden but soon has to stop on account of his pain.
"This represents the whole of the lay testimony in the case. No witnesses were offered by the defendant to dispute or contradict plaintiff's testimony on any point as to the facts of the accident, which were substantiated by another witness and employee of defendant, or as to the subsequent work of the plaintiff on a lighter job. Therefore on those matters the Court accepts the plaintiff's testimony as being substantially correct. If it were not correct, that he worked a lighter job, did practically nothing from September 28, 1943 until February 7, 1944, laid off during *Page 303 
that time account of his injuries, etc., defendant could have produced testimony to the contrary.
"The expert testimony consists of the testimony of three physicians on behalf of the plaintiff and six on behalf of defendant, six of whom appeared and testified in court and three by deposition.
"Dr. Irvin J. Wolff, of Monroe, testified by deposition on behalf of the plaintiff. He examined plaintiff on the morning of the day the testimony was taken, September 30, 1943. The doctor examined his back and both right and inguinal regions. He said: 'There is a rather moderate relaxation of the right inguinal ring. In fact, my thumb is easily pushed up in the ring. On standing the man up on his tiptoes and asking him to cough, there is distinct bulging through this ring. The left inguinal ring is also relaxed to the extent of my being able to push, without any amount of force, or without any force, through it — my index finger through it. It is not as large as the right. There is a slight bulging in this area when the man is placed on his tiptoes and asked to cough'. Dep. 2.
"He says there is no doubt in his mind there is an incomplete right inguinal hernia and that heavy work would be calculated to make it more pronounced, and that when the plaintiff is placed at work, such as lifting that would put a strain upon the abdominal walls or muscles, there would be a general tendency to further relax the ring. Under the condition as the doctor found plaintiff, he says he is unable to work. Ev. 3 (Dep.) Dep. 7, 8.
"The doctor further stated there is a separation in the cartilage of the symphysis pubic and there is some tilting of the coccyx, and that puts the backbone out of line and a tilting to the dependent side; also that there is some limitation of motion on plaintiff bending laterally to the right and that pain was caused on lifting his right foot, and that pain reverted from the lumbar region of the back to the bladder region in front where the pelvic bones join in front. Dep. 4. As to the separation of the cartilage between the pubic bones, the doctor says that one of the bones is higher than the other and points it out on the x-ray as well as the coccyx being out of line, and that the position in which plaintiff happened to be when the x-ray was taken could not throw those out of line. Dep. 5. He says further that it is impossible to tell when such condition will heal and that the conditions are sufficient to give the pain the man complains of in the region of the back, or where the separation of the cartilage occurs, with pain when his right leg is pulled up or when he bends forward or backward. Dep. 7.
"Dr. C.H. Mosley, of Monroe, was the next witness for plaintiff who testified by deposition (Dep. 9-12). He made two examinations of the plaintiff on September 29th and 30th, 1944, the testimony being given on the latter date. From his physical examination, he said:
" 'I found that he had rigidity of the muscles of his back and I found that he has a hernia on his right side, definitely; the intestines are not down now but a history shows that it has been down, and on the left there is an enlarged ring, and there is a possibility of a hernia having existed, or you would call it a potential hernia now'; and that his back is definitely out of line and he has what is known as scoliosis — his spine is crooked and there is a separation of the pelvis in front, with an elevation of the pelvis on the left hand side, a separation of the ospubis. He says that the accident and injury, as per the history given him, would be expected to have caused such injury as he found. The physician then briefly states the history given him which corresponds with the testimony of the witnesses to the accident. Dep. 9, 10.
"Dr. Mosley made an x-ray of plaintiff's lower back and pelvic region on September 29, 1944, marked 'P-1,' and he says there is a definite fracture of the fifth lumbar vertebra and that there was a fracture of the transverse process on the left. He also testified there is a separation of a quarter of an inch in pelvic bones with an elevation of a quarter inch of the left side of the ospubis. He says the whole pelvis is disrupted and the frame of it is disrupted and that 'he will never be able to do manual labor'. Dep. 10, 11.
"Dr. T.A. Dekle, of Jonesboro, was the next witness for plaintiff who appeared in Court to give his testimony. Ev. 11-15 and 32-33. He examined the plaintiff on June 30, 1944 and October 24, 1944, the day before the trial of this case. He found the plaintiff with a hernia on both sides, with the right side more pronounced than the left. He found the muscles in the lower back rigid, with a limitation in the use *Page 304 
of the muscles in that area, some of the ligaments torn and the fifth lumbar vertebra slipped backward and forward. The fifth vertebra, he says, slips and on bending from one side to the other it jumps the other way. His examination was by manipulation. He says there is no doubt about the hernia and that plaintiff cannot do manual labor. Ev. 12-14.
"Dr. G.H. Robinson, of Hodge, La., the physician and surgeon for the defendant, was the first witness for defendant. Ev. 17-19. He testified that on September 4, 1943 plaintiff came to his office complaining of having fallen backwards and he found no pathology and he did not complain of any aching or anything. His treatment, however, was codeine and lights for aching. Ev. 18. The plaintiff went back to the doctor February 8, 1944, he did not make a note of that, nothing was done and his examination was satisfactory. He says that plaintiff had enlarged inguinal rings which he had when he went to work. He says he examined his back and found no disability of any kind. Ev. 18, 19.
"Dr. M.T. Green, of Ruston, testified on behalf of the defendant. Ev. 19-21. Dr. Green says he examined plaintiff in February, 1944, and some three months afterward; that on his first examination it was his impression and opinion 'there was a slit or defect in the floor of the hernial canal and this area was very painful to examination, and I told him and made a report at that time that this probably indicated a direct tear of the hernial canal in this area * * * while there was no protrusion into the sack, in my first examination of this man, as I said, I was convinced there was a tear in the abdominal wall. This did not exist at the time of my last examination and there was no soreness.' Ev. 20. The doctor then says that he had an x-ray made by Dr. White; that it did not show any fracture of the spine but that the picture was not low enough to show the pelvis.
"Dr. S.L. White, of Ruston, then testified for the defendant. Ev. 21-23. Dr. White made an x-ray of the plaintiff. He says that the picture does not show any pathology, injury or disability in connection with plaintiff's spine or pelvis other than there might be a little lipping of the pelvis on one side; there was no fracture of the fourth, fifth or third vertebrae. He also examined the x-ray made for plaintiff and says there is a lipping of the fifth lumbar vertebra, but no fracture, and seems to think that the position a person is in would have something to do with symphysis pubis, that is, whether one side would protrude higher than the other. However, if he says he was properly placed in making the plate, the situation would show some trouble in the symphysis pubis. The doctor says that the spine is not as much in line as it should be, although it could be normal as it was movable.
"Dr. G.M. Riley, of Shreveport, next testified on behalf of defendant (Ev. 23-28). He made two x-ray plates of the plaintiff and found no evidence of a fracture or dislocation or misalignment of the symphysis pubis or of the spine or vertebrae. He also made two plates of the knees. They likewise show no fracture, dislocation or disability. He found some arthritis, as Dr. White found, and says that a fracture can produce arthritis and, in fact, that any trauma can.
"Dr. B.C. Garrett, of Shreveport, followed Dr. Riley on behalf of the defendant. Ev. 28-31. Dr. Garrett examined the plaintiff on August 24, 1944. He found no hernia but an enlarged ring on the right side and the ring on the left side somewhat enlarged. His arthritis was not very far advanced and that plaintiff's pain could be attributed to it. The doctor then explains what his conception of a hernia is, — that a protrusion is necessary, otherwise it is not a true hernia.
"The deposition of Dr. W.S. Harmon was next offered in evidence on behalf of defendant. The doctor says he examined plaintiff on June 20, 1944 and found nothing wrong with him, and that he did not have hernia.
"In rebuttal, Dr. Dekle testified on behalf of plaintiff (Ev. 3233) that the x-rays made by all the parties showed the fracture of the fifth lumbar vertebra and also showed the spine out of line, and as to the pubic bones, they all show the same deviation and separation and the doctor says that unless something happened, his spine could not be made to show out of line.
"Such is the testimony in the case. There is the usual contradiction on some points in the testimony between the experts for the plaintiff and those for defendant, and on some points it is impossible to reconcile their testimony. However, even though defendant's answer admits that the plaintiff sustained a slight injury on September *Page 305 
4th, 1943, there is uncontradicted evidence in the record by the plaintiff and Gerald Powell, an employee of defendant, that plaintiff had an accident while loading a big roll of paper on a two-wheel buggy, when the buggy and roll of paper fell on plaintiff, and Powell testified that he took the roll of paper off plaintiffs hips. Such an accident was described by several of the physicians as sufficient to cause the injuries to which plaintiff testified and of which he complained. It is also uncontradicted that plaintiff from about September 28, 1943 to February 7, 1944, worked a very light job of oiling when he could and until his condition had gotten worse and his pain became so severe he could not work longer when he quit. If such were not true that plaintiff was given lighter work, that he worked in pain, laid off often account of his condition and in bed during part of the time, defendant's foreman and employees would have known it and it could have easily produced witnesses to the contrary.
"The Court of Appeal for the First Circuit of Louisiana stated there was no presumption against the plaintiff in a compensation suit by his failure to summon defendant's foreman and employees, but rather 'on the contrary, if there is any presumption to arise at all, it would be against the employer for failing to summon its own employees', in the case of Johnson v. Hillyer, Deutsch, Edwards, Inc. [La. App.], 185 So. 652, citing Mahaffey v. Mill Creek Lumber Company [La.App.], 147 So. 834 and Hawthorn v. Hillyer-Deutsch-Edwards, Inc., 9 La. App. 660, 119 So. 772.
"The Company physician testified that the plaintiff came to him on September 4, 1943 and reported an accident of falling backwards (Ev. 18) and that he treated him for aching by giving him codeine and administering lights. He says he treated him later on February 8, 1944 and once later. That is self-evident inconsistency with the statement that he found nothing wrong with the plaintiff. Dr. Wolff testified for plaintiff that plaintiff had definitely an incomplete right inguinal hernia (Dep. 3) and that it would bulge out, and that on plaintiff standing and coughing, a bulge could be felt on the left side. In his present condition he says he could not work. Let's see who agrees with that finding? Of course, the other two physicians appearing as witnesses for the plaintiff, Doctors Mosley and Dekle. Dr. M.T. Green, for the defendant, says that it was his opinion there was a slit or defect in the floor of the hernial canal, which was very painful to examination, and that he told the plaintiff and made a report to that effect that this probably indicated a direct tear of the hernial canal in this area, and that he was convinced there was a tear in the abdominal wall. Dr. B.C. Garrett, on behalf of the defendant, testified that plaintiff's inguinal rings were enlarged, the right one more pronounced than the left. He says that is not a hernia because a hernia presupposes there is an actual protrusion. In fact, Dr. Robinson, as physician for defendant, admitted that the rings were enlarged. Plaintiff's witness, Dr. Mosley, says that he has a hernia definitely on the right side and that the ring on the left side is enlarged. Dr. Dekle found the plaintiff with a hernia, more pronounced on the right side.
"In the Johnson v. Hillyer, Deutsch, Edwards, Inc., supra, in a hernia case the Court said the question was as to the extent of the injury and the effect of the injury on plaintiff's ability to do manual labor. He continued:
" 'We might go further and say that the only question presented is whether or not plaintiff sustained an abdominal hernia on either side — complete or incomplete — by reason of the injury, as there is no difference in an incomplete or reducible hernia and a complete or irreducible one, from a legal standpoint, if either kind would incapacitate the injured employee from doing manual labor, and unquestionably either kind of hernia would produce this result. Parker v. Weber-King Mfg. Company, 19 La. App. 177, 139 So. 660.'
"From the testimony of plaintiff and Powell as to the fact of the accident uncontradicted, and the manner in which it occurred, the testimony of three experts on behalf of plaintiff that he sustained and now has a hernia, which is to some degree corroborated by more than one expert for the defendant, and notably Dr. Green from whose testimony quotations are contained above, I am convinced that the plaintiff has a hernia, whether complete or incomplete, that renders him unable to perform manual labor of a reasonable character.
"As stated by the Court in the Johnson case, supra, where there is a conflict in the medical testimony and there is no apparent way to reconcile it, the Court is not bound *Page 306 
by the number of opinions on one side or the other, but it is the Court's duty to ferret out the truth of the matters at issue. After giving thorough consideration to the testimony of all the witnesses in the case, the Court has reached the conclusion and is of the opinion that plaintiff has a hernia, that it is disabling and prevents him from performing manual labor.
"With the above findings of fact and the jurisprudence of this State:
" 'The jurisprudence of this State is to the effect that the compensation payable under the Employer's Liability Act for a traumatic hernia producing total disability is 65% of the weekly wages during the period of disability not, however, exceeding 400 weeks.' Iry v. Traders General Ins. Co. [La.App.] 176 So. 693; Miller v. Frank Grocery Co. [17 La. App. 333], 136 So. 143; James v. Hillyer, Deutsch, Edwards, Inc. [15 La. App. 71], 130 So. 257, the case may as well be disposed of, but for the injuries alleged to have been caused to the spine and pelvic bones, which, in the Court's opinion, present a matter of a more serious and disabling injury. Regardless of the conflict in the testimony relative to this phase of the case and after giving thorough consideration to all the evidence in the case, the Court is of the opinion that the plaintiff has sustained injuries to his spine and pelvis. The pubic bones are separated and one side is higher than the other. This is an immovable joint and the x-rays, even to a layman, show the difference in elevation of the two sides of these bones. The evidence and the x-rays also show that the spine is out of line. Dr. Dekle demonstrated the fact that when plaintiff bends sidewise, the fifth lumbar vertebra will 'jump' in the opposite direction when the movement reaches a certain point. The plaintiff's medical experts also testify that the fifth lumbar vertabra is fractured — that is disputed by the physicians testifying on behalf of defendant. However, about two of them corroborated the plaintiff's witnesses to the effect that there was a lipping of that vertebra. These injuries were caused when the heavy roll of paper fell and struck his hips, as Powell testified to.
"A review of the testimony relative to this injury of the pelvis and back would parallel closely the findings and statements relative to the hernia and a repetition would not serve any good purpose. On account of this accident and from the fact of the hernia and the injuries to the pelvis and back, the Court is of the opinion that the plaintiff is permanently and totally incapacitated from performing manual labor of any reasonable kind or character and that he is entitled to recover compensation accordingly.
"Plaintiff's wages were $29.12 per week and 65% thereof is $18.93, the weekly compensation. Deduction of the time that plaintiff was paid a wage from September 28, 1943 to February 7, 1944 and the time compensation was paid following the accident until September 28, 1943 and the time compensation was paid from February 7, 1944 to June 20, 1944, which is a total of forty-one weeks and three days, from the 400 weeks, we find that plaintiff is entitled to be paid compensation during the period of disability not, however, to exceed 358 weeks and four days from June 20, 1944 until paid, and all costs of this suit.
"Plaintiff's counsel's fees are hereby fixed in accordance with the law at 20% of the amount received and collected as compensation under this judgment and claim.
"Plaintiff also prays that the fees of the expert witnesses' be fixed by the Court. He is entitled to this and the law provides that unless fixed in the judgment, such fees shall not be allowed. (Act 20 of 1914, Sec. 18, Par. 4, as amended by Act No. 85 of 1926; Dart's, Section 4408). Plaintiff used three expert witnesses — Dr. T.A. Dekle, a resident of Jonesboro, La., who appeared personally in Court to give his testimony; Dr. C.H. Mosley and Dr. Irvin J. Wolff, both of Monroe, La., who testified by depositions taken by the attorneys out of Court before the Court Reporter in and for Ouachita Parish, La. The Court thinks that $25.00 each is sufficient and adequate as such witness fees and yet not excessive. That amount seems to be in line with allowances heretofore made. Richardson v. Southern Kraft Corp. [La.App.], 5 So.2d 24; Kirby v. Terminal Bag Company, Inc. [La.App.], 6 So.2d 562; Lee v. International Paper Company [La.App.], 16 So.2d 679; and Jones v. International Paper Company [La.App.], 11 So.2d 555.
"In addition, however, the Court is of the opinion that Dr. Mosley is entitled to the further sum of $15.00 for making the x-ray plates which were used in evidence in this case. Kirby v. Terminal Bag Company, *Page 307 
Inc., supra. The fees are accordingly fixed and taxed as costs.
"Formal judgment is to be presented and signed."
Judgment was signed in accordance with the opinion and defendant is now prosecuting this appeal therefrom.
[1] Appellant contends here that the Lower Court confused or ignored the time element and the sequence of events in finding for plaintiff. In our opinion, the Lower Court has correctly set forth the sequence of events which covered the time element as claimed by appellant. Appellant admits the correctness of the accident, as alleged by plaintiff, but denies that he suffered any injury in the accident or, if he did, that he has recovered. The evidence, as outlined by the Lower Court, and well borne out by the record, is so conclusive on the question of plaintiff's being injured in the accident until further discussion of it is unnecessary. It is also our opinion that the record bears out the fact, as found below, that plaintiff has not recovered and was totally disabled at the time of trial.
The record discloses that during the trial plaintiff was stripped to his waist in open Court and Dr. Dekle demonstrated to the Court the slipping of certain vertebrae of the back upon plaintiff's bending to one side or the other. The trial Judge was called on to feel the slipping during the demonstration and did so. Defendant did not attempt to contradict or explain that which was shown by the demonstration, preferring to stand on the former finding of its medical witnesses that there was no pathology of the back, as shown by the x-rays they made. Appellant complains of the Lower Court in accepting the x-ray picture made by one of its medical witnesses instead of the pictures made by plaintiff's medical witness.
[2, 3] It would be dangerous indeed for the Court to discard either and we do not think the Lower Court did. All the plates were testified about and the medical men disagreed, as usual, as to what they disclosed. It is common knowledge that two x-ray plates of the person taken at the same time or at different times will not always show the same thing and that every x-ray picture will not disclose an injury, therefore, the reason for taking more than one picture. If one plate fails to show an injury and another does show it, always the one showing the injury is considered correct by the x-ray men, unless some manipulation had been resorted to to cause the picture to be false. It is like a Wassermann test, often one test will show negative while another will show a systemic condition. When a systemic condition is shown, it is considered as correct, while the failure to show such will not always prove such a condition does not exist.
After a most careful study of the case, we are convinced that the Lower Court has correctly set forth the facts and determined them. Therefore, the judgment of the Lower Court is affirmed, with costs.